**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11210

Non-Argument Calendar

————————————

MATTHEW REED,

*Plaintiff-Appellant,*

*versus*

BEKO TECHNOLOGIES CORP.,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-03563-WMR

————————————

Before ROSENBAUM, GRANT, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Matthew Reed appeals the district court's order granting Defendant-Appellee Beko Technologies Corpora-

tion's (Beko) renewed motion for judgment as a matter law following a jury verdict in Reed's favor on his retaliation claim in his 42 U.S.C. § 1981 employment-discrimination action. After careful review, we vacate and remand.

## I.

Reed, an African American man, sued Beko, his former employer, for claims of race discrimination and retaliation under 42 U.S.C. § 1981. After discovery, Beko moved for summary judgment on both claims. The court granted summary judgment on race discrimination but denied summary judgment on the retaliation claim. Notably, the court explained that there was a genuine issue of material fact as to what happened in a phone call between Reed and Beko's CEO Tilo Fruth, a white man, which led to the end of Reed and Beko's working relationship.

At trial, Reed testified that during his performance review in January 2021,[1] he was told that he would not be getting a raise and that no one at the facility would be getting a raise either due to the pandemic. After this conversation, Reed spoke with Robert Turner, a white man, where he learned that Turner had received a raise but had been told to keep it under wraps. Reed spoke with his manager, who told him that Fruth had instructed him not to give Reed a raise.

Later, in August 2021, Andy Davis, who worked for the safety division, came to Reed's station and harassed him. Reed

---

[1] Reed began working at Beko in 2016.

emailed Melanie Jauch, Beko's Human Resource Manager, about the incident. Jauch set up a time for Fruth to call Reed to talk about the incident.

Reed testified that during that call Fruth asked Reed what had happened, and Reed told him about his interactions with his coworker Davis. Reed explained that Fruth repeatedly told Reed to drop the case. At that point, Reed reiterated that he was not going to drop it and then asked Fruth if raises were determined by performance, and Fruth said they were. Reed asked why he had not received a raise that year, and Fruth told him that nobody had received a raise because of the pandemic. Reed stated that Turner had received a raise, and Fruth asked why Reed was bringing up Turner, to which Reed replied, "because he's white."

According to Reed, Fruth then "went off," telling Reed "I don't want you here. Get out of here. I don't want you at Beko. I don't want you here. Just give a two week notice. No. Give a four week notice." Fruth continued to badger Reed "to email Melanie and tell her you're giving her a four-week notice and I want you to copy on it," and kept repeating that he wanted Reed to resign. Eventually Reed "got tired, [told Fruth] okay," at which point Fruth hung up the phone call. Reed never emailed Jauch to resign. Reed then went on paid time off and ultimately never went back to work at Beko.

Fruth testified at trial that he spoke with Reed about the incident with Davis and that Reed became very upset during the conversation. According to Fruth, in that phone call Reed ultimately

said he was resigning and would give his notice. Jauch testified that after this conversation, Fruth told her about Reed's resignation and wanted Jauch to follow up. Jauch then emailed Reed: "To follow up on your conversation with Tilo this morning, this email serves as a confirmation that we accept your 2 week notice of resignation." Reed responded to Jauch's email saying "that [he] did not resign, [he] did not give you a written four-week notice or two weeks' notice."

The jury returned a verdict for Reed, specifically finding that he had engaged in a protected activity, that Beko had taken an adverse employment action against him, that the action was because of Reed's protected activity, and that he suffered damages as a result of the action. The jury awarded damages of $84,724.46 and found that Beko acted with malice or reckless indifference to Reed's federally protected rights, awarding him $450,000 in punitive damages.[2]

Beko renewed its motion for judgment as a matter of law, arguing that considering all the evidence, no reasonable jury could have found that Reed had shown a claim of retaliation. The district court agreed and found that the evidence did not support a finding that Reed had suffered a material adverse action. Reed timely appealed.

---

[2] Reed also moved for attorney's fees under 42 U.S.C. § 1988(b). Because the district court granted Beko's motion for judgment notwithstanding the verdict, it denied Reed's motion for attorney's fees.

## II.

We review de novo the district court's ruling on whether to grant a party judgment as a matter of law. *Gen. Am. Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893, 898–99 (11th Cir. 1996). We review all the evidence, and all reasonable inferences from it, in the light most favorable to the non-moving party. *Id.* at 899. In considering the evidence, the court should grant the motion only if "the facts and inferences point [so] overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (citation omitted). We do not assume the jury's role of weighing conflicting evidence or inferences, or assessing the credibility of witnesses. *Id.* The court, however, should deny the motion so long as there is "substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001) (per curiam).

Rule 50(a) of the Federal Rules of Civil Procedure states that, if a party has been fully heard on an issue during a jury trial, and the court determines that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on the issue, the court may grant a motion for judgment as a matter of law against the party on the claim or defense. Fed. R. Civ. P. 50(a)(1). Rule 50(b) provides that the party may then renew the motion after trial. Fed. R. Civ. P. 50(b).

6                          Opinion of the Court                     25-11210

Section 1981 of Title 42 of the U.S. Code encompasses race-based retaliation claims in the employment context.[3]  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455, 457 (2008).  To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected conduct; (2) suffered an adverse employment action; and (3) there is some causal relationship between the two events.  *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021).  If the plaintiff does so, and the employer proffers a legitimate, nondiscriminatory reason for its actions, then the plaintiff must show that the reason given is pretextual.  *Brown*, 597 F.3d at 1181–82.

The district court found that "the evidence clearly shows that [Reed] resigned from his employment, [and] there is no materially adverse action to support" his claim for retaliation.  Reed argues that the district court erred in granting Beko's renewed motion for judgment as a matter of law by finding, based on disputed evidence at trial, that no reasonable jury could have found that he had suffered a materially adverse action, or that he had been terminated, rather than voluntarily resigned.  We agree with Reed.

As noted above, only two people know what occurred on the phone call in August 2021—Reed and Fruth.  There are two versions of what occurred on that phone call.  Reed testified that

---

[3] Section 1981 has the same requirements of proof and uses the same analytical framework as claims brought under Title VII of the Civil Rights Act of 1964. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n.14 (11th Cir. 2011).

he was continuously berated by Fruth and demanded that Reed resign, while Fruth testified that Reed got angry and resigned. Whether Reed involuntarily resigned was the key question that the jury had to answer. Our case law shows that when determining whether a resignation is involuntary enough to be considered coerced resignation, we take into account the circumstances of the resignation and how they affected the employee's ability to exercise free choice. *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (per curiam). Considering the facts presented to the jury in the light most favorable to Reed as the non-moving party, Reed was not given an alternative to resignation, he did not believe that he had actually resigned during the phone call, he was not given time to make a decision, and he did not have the advice of counsel. All these factors support a deduction that Reed's resignation was not voluntary, and there is sufficient evidence for a jury to have believed Reed. *See id.*

The district court erroneously construed the evidence in the light most favorable to Beko at every opportunity. This was inappropriate when reviewing a motion for renewed judgment as a matter of law. *See Gen. Am. Life Ins. Co.*, 100 F.3d at 899. Instead, the district court should have made inferences in favor of the non-movant, Reed, as the legal standard requires. *See id.* Thus, the district court erred in granting Beko's renewed motion for judgment

as a matter of law because there was a legally sufficient evidentiary basis to support the jury's verdict that Reed had not resigned.[4]

### III.

Reed also argues that the district court erred by denying his motion for attorney's fees because it erred in granting Beko's renewed motion for judgment as a matter of law.  We review the grant of attorney's fees for an abuse of discretion.  *Bonner v. Mobile Energy Servs. Co.*, 246 F.3d 1303, 1304 (11th Cir. 2001) (per curiam).

The district court abused its discretion when it improperly denied Reed's motion for attorney's fees based on its erroneous ruling granting Beko's renewed motion for judgment as a matter of law.  Thus, we vacate the denial of attorney's fees and remand for the district court to determine in the first instance Reed's entitlement to attorney's fees.

**VACATED AND REMANDED.**

---

[4] There was also sufficient evidence that a reasonable jury could have believed that in a phone call to Fruth, Reed complained about not getting a raise when his white co-worker did, which was protected conduct, and that Fruth's demands for resignation in the same phone call showed a causal relationship between Reed's involuntary resignation and the protected conduct.